

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ORLANDO ALFREDO GIMENEZ GIL,

Petitioner,

v.

WARDEN, OTAY MESA DETENTION CENTER, et al.,

Respondents.

Case No.:  3:25-cv-03279-DMS-VET

**ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus ("Petition").  (Pet., ECF No. 1).  Respondents filed a return to the Petition.  (Return, ECF No. 5).  Petitioner, proceeding pro se, did not file a reply.  After reviewing the initial briefs, the Court issued an Order requiring supplemental briefing to address the following issues: (1) whether Petitioner's parole was revoked prior to the dismissal of his removal proceedings on June 24, 2025; (2) whether the dismissal of Petitioner's removal proceedings and initiation of expedited removal proceedings without parole or an opportunity to be heard violates Petitioner's due process rights under *Mathews v. Eldridge*, 424 U.S. 319 (1976); and (3) whether the January 2025 Designation, Office of the Secretary, Department of Homeland Security, Designating Aliens for Expedited Removal, 15 Fed. Reg. 8139 ("2025 Designation")—which expanded the application of expedited

removal—applies to individuals, like Petitioner, who entered the United States prior to its effective date.  (ECF No. 9).  Respondents filed their supplemental response.  (ECF No. 10).  Petitioners did not file further briefing.  The Court finds this matter suitable for decision without oral argument.  S.D. Cal. Civ. R. 7.1(d)(1); *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (holding that an evidentiary hearing is not necessary when deciding only questions of law).  For the following reasons, the Court grants the Petition.

## I.    BACKGROUND

On July 13, 2024, Petitioner, a Venezuelan national, entered the United States at the Paso del Norte Port of Entry, through the CBP One program.  (Pet. ¶ 1); (Return 2).  On the same day, Petitioner was charged with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (as an immigrant not in possession of valid entry documents), and placed in removal proceedings under 8 U.S.C. § 1229a.  (Return 2).  Petitioner was then released from custody on humanitarian parole, as authorized by 8 U.S.C. § 1182(d)(5)(A).  (*Id.*).

Since entering the Country, Petitioner "has voluntarily attended all required immigration appointments."  (Pet. ¶ 2).  He has no criminal history.  (*Id.*); (Return, Ex. 6, at 22).  During an immigration court appearance on June 24, 2025, an immigration judge granted the Department of Homeland Security's ("DHS") motion to dismiss Petitioner's removal proceedings, (Return 1), and the same day, Immigration and Customs Enforcement ("ICE") detained Petitioner and issued a new Notice and Order of Expedited Removal, placing Petitioner in expedited removal proceedings under 8 U.S.C. § 1225(b)(1).  (*Id.* at 2).  ICE detained Petitioner under § 1225(b)(1).  (*Id.*).  Petitioner then requested asylum or protection under the Convention Against Torture ("CAT").  (*Id.*).  Petitioner was interviewed by a Citizenship and Immigration services asylum who made a "positive determination" on Petitioner's case.  (*Id.* at 2–3).  Petitioner was subsequently issued a new Notice to Appear, re-charged with inadmissibility under § 1182(a)(7)(A)(i)(I), and re-placed in removal proceedings under § 1229a.  (*Id.* at 3).

Petitioner sought relief from removal, seeking asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C § 1231(b)(3), and relief under the CAT. On October 6, 2024, an immigration judge denied all relief and ordered Petitioner to be removed to Mexico or, alternatively, Venezuela. (*Id.*). Petitioner appealed to the Board of Immigration Appeals, which is pending review. (*Id.*). Because of the appeal, Petitioner does not have a final removal order and Petitioner's removal proceedings remain ongoing. (*Id.*). Petitioner remains mandatorily detained under § 1225(b)(1)(B)(ii) at the Otay Mesa Detention Center. (*Id.*); (Pet. 1).

The Petition asserts that Petitioner's detention violates the Fifth and Fourteenth Amendment's Due Process Clauses and the Eighth Amendment's protection against excessive punishment. (Pet. 2–4). Respondents maintain that Petitioner is being lawfully detained under § 1225(b)(1)(B)(ii). (Return 9–12). Petitioner requests a writ of habeas corpus ordering the immediate release of Petitioner under reasonable conditions of supervision while his appeal remains pending, or, in the alternative, ordering a bond hearing before an immigration judge within ten days. (Pet., Relief Requested, ¶¶ 1, 2).

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A petitioner prevails in his petition for writ of habeas corpus if he shows that his custody violates the Constitution or laws of the United States. *Id.* § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III.    DISCUSSION

### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction per 8 U.S.C. § 1252(b)(9) and (g). (Return 3). The Court has previously considered and rejected this argument. *See Vasquez Garcia v. Noem*, --- F.Supp.3d ----, 2025 WL 2549431, at *3–4 (S.D. Cal. Sept. 3, 2025); *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, ECF No. 7, at 3–4 (S.D.

Cal. Oct. 30, 2025). Based on the reasoning of those cases, the Court again rejects this argument.

Respondents also argue that "to the extent that the Petitioner can be understood to challenge the dismissal of the original [removal] proceedings and the issuance of an *expedited* removal order, that claim is particularly foreclosed" under 8 U.S.C. § 1252(a)(2)(A). (Return 6). "[E]xcept as provided under 8 U.S.C. § 1252(e), courts lack jurisdiction to review any individual determination or claim arising from or relating to the implementation or operation of an order of expedited removal." *Raghav v. Wolf*, 522 F. Supp. 3d 534, 540 (D. Ariz. 2021) (citation modified) (citing 8 U.S.C. § 1252(a)(2)(A)(i)). "Under § 1252(e), review of expedited removal orders in a habeas corpus petition is limited to an inquiry over whether: (A) the petitioner is an alien, (B) whether the petitioner was ordered removed under § 1225(b)(1), and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, or is a refugee or has been granted non-terminated asylum." *Id.* (citation modified) (citing *Galindo-Romero v. Holder*, 640 F.3d 873, 875 n.1 (9th Cir. 2011)). Notably, there is no final expedited removal order here, and Petitioner is not challenging a final expedited removal order. "Where a petitioner 'does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order' the jurisdiction-stripping provisions do not apply." *Noori v. LaRose*, --- F. Supp. 3d ----, 2025 WL 2800149, at *7 (S.D. Cal. Oct. 1, 2025) (emphasis in original) (citing *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008)). Further, Petitioner "does not challenge the [expedited removal] statutory framework, nor does he challenge the wisdom of the discretionary decision to place him in expedited proceedings." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 141 (W.D.N.Y. 2025). Thus, § 1252(a)(2)(A) does not strip the Court of jurisdiction in this case.

### A. Entitlement to Due Process Protections

Respondents argue that "the statutory authority Petitioner is detained under," § 1225(b)(1), "does not afford him a right to immediate release or bond hearing before an

immigration judge," and, thus, the Court should dismiss Petitioner's constitutional claims. (Return 12 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 140 (2020))).  Respondents argue that "'even [noncitizens] paroled elsewhere in the country for years pending removal [] are "treated" for due process purposes "as if stopped at the border"'—like Petitioner here." (ECF No. 10, at 3 (citing *Thuraissigiam*, 591 U.S. at 139)).

However, this Court "agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*." *Sadeqi v. LaRose*, --- F. Supp. 3d ----, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) (emphasis in original); *Aviles-Mena v. Kaiser*, 25-cv-06783, 2025 WL 257815, at *4 (N.D. Cal. Sept. 5, 2025).  Further, it is a "'well established' rule 'that the Fifth Amendment entitles aliens to due process of law.'" *Aviles-Mena*, 2025 WL 257815, at *4 (quoting *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025)).

## B.  Merits—Fifth Amendment

Petitioner mainly argues that his "prolonged detention" is contrary to the Fifth Amendment's Due Process Clause. (*See* Pet. 8).  The Court finds that Petitioner's detention violates the Fifth Amendment for a different reason: "by moving to dismiss his [removal] proceedings, revoking his parole, and arresting him pursuant to § 1225, without providing him notice or an opportunity to be heard." *Munoz Materano v. Arteta*, --- F. Supp. 3d ----, 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025); *cf. Sadeqi*, 2025 WL 3154520, at *2 (stating that "a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing").

When determining whether Petitioner's procedural due process rights have been violated, the Court must consider:

> three distinct factors: First, the private interest that will be affected by the
>
> official action; second, the risk of an erroneous deprivation of such interest
>
> through the procedures used, and the probable value, if any, of additional
>
> or substitute procedural safeguards; and finally, the Government's interest,

1    including the function involved and the fiscal and administrative burdens

2    that the additional or substitute procedural requirement would entail.

3    *Mathews*, 424 U.S. at 335.

4        First, Petitioner "invokes the most significant liberty interest there is—the interest

5    in being free from imprisonment." *Munoz Materano*, 2025 WL 2630826, at *13 (citation

6    modified) (citation omitted). Here, Petitioner was paroled and had his removal proceedings

7    dismissed prior to being re-arrested and re-detained. Thus, Petitioner undeniably had a

8    liberty interest. Therefore, the Court finds this factor weighs in favor of Petitioner.

9        Next, there is a high risk of erroneous deprivation of this liberty interest when

10   noncitizens are re-detained without a hearing. *See, e.g.*, *Pablo Sequen v. Albarran*, ---

11   F.Supp.3d ----, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025) (citing cases). Here,

12   Respondents are "unable to determine whether Petitioner's parole was revoked before or

13   after the dismissal of his removal proceedings on June 24, 2025." (ECF No. 10, at 2). It

14   thus remains unclear from the record "exactly when, or how, a revocation was effected,"

15   or whether Respondents actually revoked Petitioner's parole prior to the dismissal of his

16   removal proceedings. *See Munoz Materano*, 2025 WL 2630826, at *14. Petitioner was

17   re-detained without an individualized assessment, bond hearing, or opportunity to contest

18   his detention under § 1225(b). In fact, Respondents argue Petitioner is not entitled to a

19   bond hearing at all. (Return 12).

20       To the extent Respondents argue that dismissal of Petitioner's pending removal

21   proceedings operates as a proper termination or revocation of parole, such that Respondents

22   could detain Petitioner under his new proceedings without providing him notice or an

23   opportunity to be heard, the Court disagrees. There is no indication that Petitioner was

24   notified that Respondents planned to initiate new expedited removal proceedings and

25   mandatorily detain him after dismissing his pending proceedings. There is no indication

26   that Petitioner had adequate opportunity to contest Respondents' motion to dismiss. In

27   fact, it appears from the Petition that Petitioner does not even understand that his initial

28   removal proceedings were dismissed. (*See* Pet. ¶ 3 ("On the day of the arrest, Petitioner

. . . was unexpectedly detained and placed in ICE custody despite having an *active* immigration case and no criminal history." (emphasis added))).

Respondents argue that the expedited removal proceedings satisfy "whatever process is due," including Petitioner's access to an asylum hearing and the credible fear process. (ECF No. 10, at 7–8). However, Petitioner is challenging his *detention* during the removal proceedings—not the removal proceedings themselves. Neither an asylum hearing nor a credible fear process allows Petitioner to contest his detention, because, as Respondents concede, Petitioner is being mandatorily detained. Thus, this factor—the risk of an erroneous deprivation of such interest through the procedures used—also weighs in favor of Petitioner.

On the third factor, "[t]he [G]overnment may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[ ] the public from dangerous criminal aliens,' or to prevent flight and thereby 'increase the chance that . . . the aliens will be successfully removed.'" *Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, 2025 WL 2650637, at *8 (N.D. Cal. Sept. 16, 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022)). However, when the Government has previously decided to release a noncitizen and there is no evidence in the record of any changed circumstance that might have caused the Government to reconsider its initial decision to release the noncitizen, courts have found the Government's interest in re-detention is low. *Doe v. Chestnut*, No. 1:25-cv-01372- CDB (HC), 2025 WL 3295154, at *10 (E.D. Cal. Nov. 26, 2025) (citations omitted). "Respondents do not argue that [Petitioner] is dangerous or a flight risk." *Munoz Materano*, 2025 WL 2630826, at *15. And "[w]hile the [G]overnment has an interest in enforcing immigration laws . . . it must pursue that interested 'in a manner consistent with the Constitution.'" *Id.* (citation omitted). This

factor, too, weighs in favor of Petitioner. Thus, applying the *Mathews* balancing test, the Court finds that Petitioner's detention violates his due process rights.[1]

## IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition. Respondents shall release Petitioner immediately, and shall not re-detain Petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which Respondents must prove that changed circumstances related to flight risk or danger warrant Petitioner's re-detention. The parties are **ORDERED** to file a Joint Status Report **on or before December 23, 2025**, indicating whether Petitioner has been released.

**IT IS SO ORDERED.**

Dated: December 17, 2025

Hon. Dana M. Sabraw
United States District Judge

---

[1] In light of this determination, the Court declines to consider Petitioner's arguments regarding the Eighth Amendment or whether the 2025 Designation is being applied to Petitioner.